RECEIVED
IN ALEXANDRIA, LA.

MAR 0 8 2010

TONY R. MOORE, CLERK
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **FRANKIE JOHNSON** | : | **DOCKET NO. 09-0107** |
| **VS.** | : | **JUDGE TRIMBLE** |
| **BOSTON MUTUAL LIFE INSURANCE** | : | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the Court is "Boston Mutual Life Insurance Company's Motion for Summary Judgment" (doc. #26) wherein the mover seeks summary judgment in its favor maintaining that it did not abuse its discretion in denying Plaintiff, Frankie Johnson's claim for disability benefits. The Court has granted several extensions to Plaintiff's counsel to respond to the instant motion: Doc. #30 dated December 9, 2009, Doc. #32 dated January 14, 2010, Doc. #34 dated February 2, 2010. The last Order granted an extension which required Plaintiff to file his opposition brief no later than February 15, 2010. As of this date, Plaintiff has failed to file an opposition to the motion for summary judgment. This ERISA case was removed to this Court on January 23, 2009. The Court has been sufficiently lenient toward Plaintiff's attorney to allow him to present his best case. However, Defendants also have a right to have suits brought against them adjudicated in a timely manner. Accordingly, the Court will decide the matter based on the brief filed by Defendant.

## FACTUAL STATEMENT

Boston Mutual Life Insurance Company ("Boston Mutual") is an insurance company, and Disability RMS ("RMS") acts as its third-party claims administrator in connection with certain group

disability insurance policies. Johnson, by virtue of his employment with Southside Machine Works, Inc. ("Southside") was issued a group disability income insurance policy effective November 1, 2003. Boston Mutual received an application for disability benefits from Johnson dated June 29, 2005, wherein Johnson claimed that he was unable to work as of June 23, 2005 due to degenerative back problems.

Johnson's claim form included an attending physician's statement ("APS") from Dr. Carl Nabours who diagnosed Johnson with severe degenerative joint disease/spinal stenosis-lumbar spine. The statement included restrictions and limitations of no lifting and bending.

Dr. John Raggio is also identified as an additional treating physician. RMS sent letters to Drs. Nabours and Raggio requesting medical records. Dr. Nabours' records indicated Johnson's long-term prognosis was poor. RMS spoke with Dr. Nabours, who stated much of his treatment of Johnson was "off the record" because he [Nabours] was Johnson's landlord. Dr. Nabours opined that Johnson was in "a bad way" and "would not be able to work in a machine shop."[1]

Dr. Raggio's records revealed that he first evaluated Johnson in August 2005. On initial evaluation, Dr. Raggio commented that Johnson was symptomatic of "lumbar spinal stenosis," and further recommended that Johnson begin with an epidural steroid and an exercise program.[2] By September 21, 2005, Dr. Raggio remarked that Johnson was "much improved" having taken only three (3) pain pills over the last month.[3]

RMS then submitted the information to Christine McCrum, RN, who concluded that

---

[1] R. at 127.

[2] R. at 118.

[3] R. at 119.

Johnson's treatment had been conservative, surgery had been discussed as a future option, Dr. Raggio had not provided any restrictions and limitations, and  Johnson could return to work when he felt like it.  Due to the absence of restrictions and limitations, Nurse McCrum recommended that RMS clarify with Dr. Raggio whether he had provided any specific restrictions and limitations in connection with the low back pain.  RMS further contacted Southside regarding Johnson's job duties as a Machinist.[4] RMS was informed that Johnson's duties required being able to lift up to 50 pounds and have the ability to apply a significant amount of torque while tightening work product into the machinery.[5]

On December 12, 2005, Nurse McCrum wrote to Dr. Raggio and specifically inquired about Johnson's specific limitations and restrictions and ongoing treatment plan.  Dr. Raggio put no restrictions and limitations on Johnson and indicated that he should "follow up in my office if symptoms return."[6]

By letter dated January 2, 2006, RMS advised Johnson that his claim had been denied because it did not appear that he was disabled from his own occupation.  On June 20, 2006, Johnson submitted a letter indicating his intent to appeal the claim denial.  Johnson was subsequently informed that RMS would attempt to make a determination on the claim within 45 to 90 days after receipt of the appeal based on previously submitted information and any new information Johnson might submit in the re-evaluation process.[7]

---

[4]  R. at 110.

[5]  R. at 110.

[6]  R. at 104.

[7]  R. at 75.

A subsequent telephone conversation with Johnson indicated he was scheduled for surgery on August 16, 2006 with Dr. James Perry.  RMS requested from Dr. Perry,  Johnson's medical records and in addition, contacted Southside for more information regarding the physical requirements of Johnson's job as a machinist.  These medical records indicated that Johnson underwent a medial branch block procedure on June 16, 2006.[8]

On July 27, 2006, RMS submitted the claim to Dr. Keller for orthopedic review to comment on any restrictions and limitations ("R & Ls"), whether Dr. Keller supported any R&Ls based on Johnson's reported condition, and if so, what R & Ls existed from the date of Johnson's disability. Dr. Keller reviewed Dr. Perry's medical file and then made comments as to Dr. Raggio's R & Ls. He also recommended a follow-up with Dr. Raggio and remarked that it would be helpful to obtain a copy of the June 5 MRI for in-house review and to determine the severity of the claimant's lumbar spine condition.[9]

Dr. Keller wrote to Dr. Raggio for additional information and advised him of Dr. Perry's findings and recommendation for an anterior interbody fusion scheduled for August 16. 2006.[10]  In a letter dated August 29, 2006, Dr. Raggio responded that on September, 19, 2005, Johnson had improved 50% on an epidural and that Dr. Raggio felt that Johnson could work at the time.[11]  Dr. Raggio also confirmed that he had last seen Johnson in August 2005.  Based on this response, Dr. Keller concluded that "[I]  find  no  documentation  of  symptoms,  physical  findings,  or  other

---

[8]  R. at 54-55.

[9]  R. at 40.

[10]  R. at 36.

[11]  R. at 30.

documentation that would support R& Ls prior to that date."[12]

On September 13, 2006, Disability RMS wrote to Johnson and informed him that the original claim decision was being upheld.[13] On that same date, Disability RMS spoke with Mr. Johnson and advised him of the voluntary re-appeal process.[14] No additional information was received and this lawsuit followed.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[15] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[16]   A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[17] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[18] Once the movant makes this showing, the burden shifts to the non-moving

---

[12]  R. at 26.

[13]  R. at 19-23.

[14]  R. at 14.

[15]  Fed. R.Civ. P. 56(c).

[16]  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

[17]  *Stewart v. Murphy,* 174 F.3d 530, 533 (5th Cir. 1999).

[18]  *Vera v. Tue,* 73 F.3d 604, 607 (5th Cir. 1996).

party to set forth specific facts showing that there is a genuine issue for trial.[19]  The burden requires

more than mere allegations or denials of the adverse party's pleadings.  The non-moving party must

demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material

fact or law.[20]  There is no genuine issue of material fact if, viewing the evidence in the light most

favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[21]

If the evidence is merely colorable, or is not significantly probative, summary judgment may be

granted."[22]

## LAW AND ANALYSIS

Plaintiff, Frankie Johnson, filed the instant suit in order to recover long-term disability

benefits under a group insurance policy issued by Boston Mutual Life Insurance Company ("Boston

Mutual").[23]  He asserts a claim for benefits pursuant to the Employee Retirement Income Security

Act of 1974 ("ERISA").[24] Boston Mutual maintains that it did not abuse its discretion in denying

Johnson's claim for disability benefits and seeks to have the instant lawsuit dismissed pursuant to

this motion for summary judgment.

A determination that a participant is not disabled under a disability policy is a factual

---

[19]   *Anderson,* 477 U.S.  at 249.

[20]   *Celotex Corp. v.  Catrett,* 477 U.S. 317, 324 (1986).

[21]   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

[22]   *Anderson,* 477 U.S. at 249-50.

[23]   Boston Mutual's third-party administrator was Disability RMS.

[24]   29 U.S.C. § 1132(a)(1)(B).

6

determination subject to review by a district court under an abuse of discretion standard.[25]  Under an abuse of discretion standard, the district court owes due deference to the factual conclusions of Boston Mutual so long as those conclusions reflect a reasonable and impartial judgment.[26]  An abuse of discretion occurs only where the record contains *no basis* upon which the decision-maker rationally could have made its decision or if the action is arbitrary, fanciful, or clearly unreasonable.[27]  The district court may not reverse an insurer's determination unless it has a firm and definite conviction of a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.[28]  In evaluating whether an abuse of discretion occurs, the district court may only consider the evidence available when Boston Mutual (through its claims administrator) reached the claim decision regarding Johnson.[29]

Boston Mutual argues that based on the Administrative Record, there is substantial evidence that Johnson is not disabled because of the lack of restrictions or limitations keeping him from performing the "material and substantial" duties of his occupation as a Machinist. Boston Mutual relied on the findings of its medical and nurse consultants, independent consultants and the opinion of Dr. Raggio.  Dr. Raggio was one of Johnson's treating physicians and a specialist; he placed no

---

[25] *Sweatman v. Commercial Union Ins. Co.,* 39 F.3d 594, 598 (5th Cir. 1999).

[26] *Pierre v. Conn. Gen. Life Ins. Co.,* 932 F.2d 1552, 1562 (5th Cir.), *cert. denied,* 502 U.S. 973 (1991).

[27] *Datascope Corp. v. SMEC, Inc.,* 879 F.2d 820, 828 (Fed. Cir. 1989), *cert. denied,* 110 S.Ct. 729 (1990).

[28] *Barona Group of the Capitan Grande Band of Mission Indians v. American Mgmt. & Amusement, Inc.,* 840 F.2d 1394, 1408 (9th Cir. 1987), *cert. dism'd,* 487 U.S. 1247 (1988).

[29] *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.,* 97 F.3d 822, 827 (5th Cir. 1996).

7

R & Ls on Johnson, and further opined that he felt that Johnson could work at the time.[30]  Dr. Nabours opined that Johnson could not work;  Dr. Nabours, was Johnson's landlord who stated that much of his treatment of Johnson was "off the record."[31]

The Court notes that there are no medical records in the Administrative Record from Dr. Perry that could potentially contradict Dr. Raggio's opinion that Mr. Johnson had no R & Ls and/or could return to work at any time.  The Court finds that there is substantial evidence in the Administrative Record to support the decision to deny Johnson's claim for disability benefits. Accordingly, we find no abuse of discretion by Boston Mutual.

## CONCLUSION

Based on the foregoing and for the reasons given herein, the motion for summary judgment filed by Defendant will be granted, dismissing with prejudice the claims of Plaintiff.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this _8th_ day of March, 2010.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

---

[30]  R. at 104; R. at 30.

[31]  R. at 127.

8